UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DENISE DIANNA BUCHANAN, ) | |
|     Petitioner, ) | 3:06-cv-00340-LRH-RAM |
| vs. ) | |
|  ) | ORDER |
| WARDEN SHERYL FOSTER, *et al.*, ) | |
|     Respondents. ) | |

This action proceeds on the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by Denise Dianna Buchanan, a Nevada prisoner represented by counsel. This action is before the Court for decision on the merits of the amended petition.

**I.  Background and Procedural History**

On January 28, 1998, an indictment was filed against petitioner in the Second Judicial District for Washoe County, Nevada, charging her with three counts of murder. (Exhibit 2).[1] Count I alleged that petitioner murdered her son Jeremiah Leal by asphyxiation on or about November 7, 1989; Count II alleged that petitioner murdered her son John Leal by asphyxiation on or about April 3, 1991; and Count III alleged that petitioner murdered her son Jacob Leal by asphyxiation on or about July 16, 1994. (Exhibit 2). On February 11, 1998, petitioner was arraigned. (Exhibit 10). On January 13, 1999, an information superceding indictment charging petitioner with the same three murders was filed. (Exhibit 74). The only significant difference between the indictment and the

---

[1] The exhibits referenced in this order are found in the Court's record at Docket #19-42.

information superceding indictment was the deletion by the prosecution of language charging child abuse after each count. (Exhibit 75, at p. 2).

The case proceeded to a jury trial, which lasted from March 17, 1999 through April 13, 1999. (Exhibits 84-118). Petitioner was convicted of the murders of John and Jacob, but acquitted of the murder of Jeremiah. (Exhibit 118). On August 20, 1999, petitioner was sentenced as follows: on Count II, to life with the possibility of parole and on Count III, to life with the possibility of parole, with the sentences to run consecutively to one another. (Exhibits 130 and 131).

On September 20, 1999, petitioner filed a notice of appeal. (Exhibit 134). On May 22, 2000, petitioner filed her opening brief. (Exhibit 155). On October 6, 2000, the State filed is answering brief. (Exhibit 164). The Nevada Supreme Court ordered supplemental briefing. (Exhibits 174, 175, and 178). On May 30, 2003, the Nevada Supreme Court issued a published opinion affirming petitioner's conviction. (Exhibit 180; *Buchanan v. State*, 119 Nev. 201, 69 P.3d 694 (Nev. 2003)). Remittitur issued on June 24, 2003. (Exhibit 182).

On May 25, 2004, petitioner filed her post-conviction habeas corpus petition in state district court. (Exhibit 185). Petitioner was appointed counsel. (Exhibit 191). On April 21, 2005, the district court granted the State's motion to dismiss the petition. (Exhibit 197).

On April 28, 2005, petitioner filed her notice of appeal from the order dismissing her state habeas petition. (Exhibit 199). On May 5, 2006, the Nevada Supreme Court entered its order of affirmance of the district court's order dismissing the habeas petition. (Exhibit 214). Remittitur issued May 30, 2006. (Exhibit 216).

On June 16, 2006, petitioner, proceeding with retained counsel, submitted a federal habeas petition to this Court. (Docket #1). On August 28, 2006, petitioner filed an amended petition. (Docket #8). The amended petition contains four grounds for habeas relief: (1) that there was insufficient evidence to sustain petitioner's conviction beyond a reasonable doubt; (2) that the prosecution knowingly and in bad faith destroyed evidence critical to petitioner's theory of defense and failed to collect evidence which could disprove the State's suffocation theory; (3) the district court's instruction on the elements of premeditation improperly reduced the State's burden of proving premeditation and deliberation beyond a reasonable doubt; and (4) trial counsel was

ineffective in failing to petition the trial court for an order requiring living family members to undergo genetic or metabolic testing and denied petitioner's statutory right to an evidentiary hearing under NRS 34.790. (Docket #8).

Respondents filed an answer to the amended petition on January 16, 2007. (Docket #18). Petitioner, through counsel, filed a motion for summary judgment. (Docket #43). By order filed August 24, 2007, this Court denied petitioner's motion for summary judgment, without prejudice to raising the same arguments in a reply to the answer. (Docket #49). Petitioner filed a reply brief on August 30, 2007. (Docket #50).

Petitioner filed a first memorandum of supplemental authorities on September 18, 2007. (Docket #52). On November 13, 2007, respondents filed a response to petitioner's first memorandum of supplemental authorities and a motion for a stay. (Docket #58). Respondents sought a stay in this action, as the resolution of Ground Three involves issues decided in *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007). Petitioner filed a response to the motion for stay. (Docket #62). By order filed August 13, 2008, this Court denied the motion for a stay, because the Ninth Circuit denied the petition for rehearing in *Polk v. Sandoval*. (Docket #69). Respondents filed a reply, in which it addressed Ground Three of the petition under the rule announced in *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007) and harmless error analysis. (Docket #63).

Petitioner filed a second memorandum of supplemental authorities on December 11, 2007. (Docket #59). On December 27, 2007, respondents filed a response to petitioner's second memorandum of supplemental authorities. (Docket #60). On January 3, 2008, petitioner filed a reply regarding the second memorandum of supplemental authorities. (Docket #61).

Petitioner filed a third memorandum of supplemental authorities on May 9, 2008. (Docket #64). On June 16, 2008, respondents filed a response to petitioner's third memorandum of supplemental authorities. (Docket #68).

II. **Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a

3

>person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

4

### III.   Discussion

####   A.  Ground One

In Ground One of the amended petition, petitioner argues that there was insufficient evidence to sustain petitioner's conviction beyond a reasonable doubt.  (Docket #8).

When a habeas petitioner challenges the sufficiency of evidence to support his or her conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (*en banc*).  The credibility of witnesses is beyond the scope of the court's review of the sufficiency of the evidence.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).  Under the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis except guilt.  *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326;  *Schell*, 218 F.3d at 1023.  *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of evidence.  *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

Petitioner's claim of insufficiency of the evidence was reviewed and denied on the merits by the Nevada Supreme Court on direct appeal.  (Exhibit 180).  The Nevada Supreme Court described the sufficiency of the evidence standard as follows:

> The relevant inquiry for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that [the decedent's] death was caused by a criminal agency." (Footnote 3: Frutiger v. State, 111 Nev. 1385, 1391, 907 P.2d 158, 161 (1995)). "[I]t is for the jury to determine what weight and credibility to give various testimony." (Footnote 4: Hutchins v. State, 110 Nev. 103, 107, 867 P.2d 1136, 1139 (1994)).  Circumstantial evidence alone can certainly sustain a criminal conviction. (Footnote 5: Walker v. State, 113 Nev. 853, 861, 944 P.2d 762, 768 (1997)).  However, to be sufficient, all the circumstances taken together must exclude to a moral certainty every hypothesis but the single one of guilt. (Footnote 6: Kinna v. State, 84 Nev. 642, 646, 447 P.2d 32, 34 (1968)).

(Exhibit 180, at p. 23).  The standard used by the Nevada Supreme Court is consistent with *Jackson*

5

*v. Virginia*, which provides that the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The Nevada Supreme Court addressed the evidence that was presented to the jury, as follows:

> There is little disagreement about the physical evidence, only the interpretation of that evidence. The trial became a battle of the medical experts, since most of the testimony regarding the cause of death was presented by medical experts who had not actually examined the bodies, but only reviewed the autopsy reports, the medical reports, the other reports of the investigation, as well as the testimony of the other medical experts.
>
> Despite the fact that most of the doctors testifying had excellent medical credentials, there was little agreement as to the cause of death of the three children. The Washoe County forensic pathologist and the two forensic pathologists with whom Dr. Clark consulted agreed that Buchanan caused the deaths. However, there was even disagreement among the other doctors about whether the autopsy photograph of Jacob depicted a normal or an emaciated failure-to-thrive child. The jurors had an opportunity to hear the opinion of all the medical experts and could look at the photograph for themselves and make their own determination.
>
> Even though the defense experts did not agree on a cause of death and disagreed with the conclusions reached by others, they seemed to agree that additional tests should have been conducted to rule out metabolic, kidney or other inherited diseases. However, other experts testified that there was no indication of any metabolic diseases when the organs were examined, and therefore, no further tests were warranted. Also, the metabolic tests that were conducted showed no abnormalities. Furthermore, the defense could still have tested for any inherited disease in the surviving Leal family members. There were abnormalities in the size and shape of Jacob's kidneys, but tests showed that they functioned normally. There was expert testimony that only half a kidney is necessary for survival. The jurors were free to judge the credibility of the various experts and make their own determination as to whom they should believe. Based on the medical experts alone, there was substantial evidence from which the jury could conclude that Buchanan killed her children.
>
> In view of the physical findings and the widely varying medical opinions, the circumstances surrounding the deaths become important. The State presented evidence that Buchanan was unemotional about the deaths of her children, that she had been physically and emotionally unavailable to the children, and that she abused her children. Buchanan told contradictory stories of the events leading to the death of Jacob, both of which were inconsistent with the physical record on the apnea monitor. Buchanan was the only person who reported seeing a life-threatening episode, and one episode that she

> reported as life threatening was contradicted by a witness to the episode. The children had medical problems in her care, but none when they were in the care of others.

(Exhibit 180, at pp. 23-25).

Petitioner cites *Smith v. Mitchell*, 437 F.3d 844 (9th Cir. 2006) and *Smith v. Patrick*, 508 F.3d 1256 (9th Cir. 2007)[2], for the proposition that there is insufficient evidence to sustain her conviction. In the *Smith* cases, the Ninth Circuit found insufficient evidence to prove that the defendant caused the death of her seven-week-old grandson. *Smith*, 437 F.3d 844. The State's experts testified that the victim died of Shaken Baby Syndrome as the cause of death. *Smith*, 437 F.3d at 889-90. However, in *Smith*, there was no evidence, either direct or circumstantial, to support Shaken Baby Syndrome as the cause of death. *Smith*, 437 F.3d at 889-90.

The instant case is distinguishable from the facts in *Smith*. In the instant case, there was significant evidence to support petitioner's conviction. Several experts concluded that the Jeremiah, John, and Jacob could not have died from any other cause than asphyxiation from suffocation or smothering, and the experts excluded other natural, genetic, hereditary, or metabolic causes of death. (Exhibit 85, at pp. 196-98, 200; Exhibit 87, at pp. 89-91; Exhibit 96, at pp. 85-87, 113, 130, 174, 211; Exhibit 98, at pp. 20, 107, 161-62; Exhibit 99, at pp. 66, 86, 91-92; Exhibit 100, at p. 58; and Exhibit 102 at pp. 22-23, 34). Petitioner told contradictory stories of the events surrounding the death of John. (Exhibit 95, at p. 47, 51; Exhibit 85, at pp. 30-39). Petitioner also told contradictory stories of the events leading up to Jacob's death. (Exhibit 85, at pp. 132-33; Exhibit 95, at pp. 85-86). Petitioner's version of events was inconsistent with the recorded data on the apnea monitor indicating when the monitor was turned off on the date of Jacob's death. (Exhibit 85, at p. 159). The apnea monitors were turned off at the time of both John's and Jacob's deaths. (Exhibit 85, at pp. 30-31; Exhibit 85, at p. 159; Exhibit 98, at pp. 156-58). Petitioner showed little or no emotion after the death of her sons. (Exhibit 85, at pp. 119-20, 134; Exhibit 86 at pp. 147, 128, 131). These facts, and others in the state court record, provide substantial evidence from which the jury could

---

[2] The United States Supreme Court remanded *Smith v. Mitchell*, 437 F.3d 844 (9th Cir. 2006) to the Ninth Circuit for further consideration in light of *Carey v. Musladin*, 549 U.S. 70 (2006). On remand, the Ninth Circuit found that the *Smith* case was unaffected by *Musladin* and reinstated its earlier judgment and opinion in *Smith v. Patrick*, 508 F.3d 1256 (9th Cir. 2007).

conclude that petitioner killed her children.

Petitioner also cites *Brown v. Farwell*, 525 F.3d 787 (9th Cir. 2008), *cert. granted*, 129 S.Ct. 1038 (2009), in support of granting the petition. In *Brown*, the Ninth Circuit found that an expert's testimony regarding DNA found in connection with a sexual assault was unreliable, specifically, the expert's statistical testimony was "misleading, as it improperly conflated random match probability with source probability." *Brown*, 525 F.3d at 795-796. Petitioner argues that "the opinions of [the prosecution's expert witnesses] Dr. Clark, Dr. Roe, Dr. Ophoven, Dr. DiMaio and Dr. McCarty all utilized statistical probability evidence that was the clear equivalent of 'source probability.'" (Petitioner's Third Supplemental Authority, Docket #64, at p. 4). This argument is misplaced, as the statistical testimony in the instant case addressed random match probability concerning the cause of death of the children, not source probability. Moreover, to the extent that petitioner argues that the prosecution's experts merely relied on statistical probabilities, the record indicates that the experts, all of whom were forensic pathologists, concluded that the deaths were caused by asphyxiation for several reasons other than statistical probabilities. Finally, to the extent that petitioner relies on *Brown* for the proposition that the Nevada Supreme Court used the wrong standard in analyzing her insufficiency of the evidence claim, this Court finds that the Nevada Supreme Court applied the correct standard, as articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).[3]

This Court has reviewed the state court record, including trial testimony and evidence, and finds that the Nevada Supreme Court applied the correct standard to the facts of the case and was reasonable in its decision to sustain petitioner's convictions. The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet her burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling

---

[3] The Ninth Circuit's *Brown* decision states that it is respondents' burden on federal habeas review to establish guilt beyond a reasonable doubt for each element of the offense. *Brown*, 525 F.3d at 797. Clearly established federal law, as determined by the United States Supreme Court, holds that federal habeas actions are not retrials and do not impose such a burden on the State. *Williams v. Taylor*, 529 U.S. 362 (2000); *Jackson v. Virginia*, 443 U.S. 307 (1979); *see also* 28 U.S.C. § 2254(d).

was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This Court will deny habeas relief as to Ground One.

**B. Ground Two**

Petitioner alleges that the prosecution knowingly and in bad faith destroyed evidence critical to petitioner's theory of defense and failed to collect evidence which could disprove the State's suffocation theory. (Docket #8). Specifically, petitioner claims that the State discarded, consumed, or failed to gather tissues of the three infants that could have shown a medical condition explaining each of the deaths.

Destruction of evidence issues are analyzed under *California v. Trombetta*, 467 U.S. 479 (1984), as modified by *Arizona v. Youngblood*, 488 U.S. 51 (1988), to require a bad faith showing for the destruction of potentially useful evidence. Mere failure to preserve evidence does not violate due process. *Mitchell v. Goldsmith*, 878 F.2d 319, 322 (9th Cir. 1989).

In *Trombetta*, the United States Supreme Court held that the police are required to preserve only that evidence which is material to the defendant's case. To be constitutionally material under *Trombetta*, the evidence must be apparently exculpatory before it is lost and "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 488-89.

In *Arizona v. Youngblood*, the United States Supreme Court held that, unless a criminal defendant shows bad faith on the part of the police or the prosecution, failure to preserve potentially useful evidence does not constitute a denial of due process. *Youngblood*, 488 U.S. at 58. The Supreme Court emphasized that this is the standard that controls when the lost evidence is merely possibly exculpatory rather than clearly exculpatory. The United States Supreme Court explained in *Youngblood*:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.

*Youngblood*, 488 U.S. at 57.

9

The Nevada Supreme Court considered this issue in petitioner's direct appeal, and applied the following standard:

> The State's loss or destruction of evidence constitutes a due process violation only if the defendant shows either that the State acted in bad faith or that the defendant suffered undue prejudice and the exculpatory value of the evidence was apparent before it was lost or destroyed. Where there is no bad faith, the defendant has the burden of showing prejudice. The defendant must show that "it could be reasonably anticipated that the evidence sought would be exculpatory and material to [the] defense." It is not sufficient to show "merely a hope-for conclusion" or "that examination of the evidence would be helpful in preparing [a] defense."

(Exhibit 180, at p. 27) (quoting *Williams v. State*, 50 P.3d 1116, 1126 (2002), *cert. denied*, 123 S.Ct. 569 (2002) and *Leonard v. State*, 117 Nev. 53, 68, 17 P.3d 397, 407 (2001)). The standard used by the Nevada Supreme Court comports with *California v. Trombetta*, 467 U.S. 479 (1984), as modified by *Arizona v. Youngblood*, 488 U.S. 51 (1988).

The Nevada Supreme Court applied the facts of the instant case as follows:

> There was no evidence of bad faith on the part of law enforcement. The murder investigation did not start until the third death, so any exculpatory value from any tissue from the first two victims would not have been apparent to law enforcement. Also, medical experts testified that because of the small size of infants, frequently the tissues are consumed in the testing.
>
> The burden of proving prejudice lies with the defendant. (Footnote 9: Sheriff v. Warner, 112 Nev. 1234, 926 P.2d 775, 778 (1996)). It is not sufficient that the defendant shows merely a hoped-for conclusion from examination of the lost evidence or that it would be helpful in preparing a defense. (Footnote 10: Id. (citing Boggs v. State, 95 Nev. 911, 913, 604 P.2d 107, 108 (1979)). Buchanan claims she hoped to prove either metabolic or hereditary kidney disease. Some defense experts indicated that the potential diseases that the defense was postulating were hereditary. Other medical experts testified that hereditary disease could still be shown by testing the living members of the family. One of Buchanan's medical experts who testified that inadequate metabolic testing was done, had signed off on the results of the metabolic tests on Jacob when he practiced as a pediatrician in Reno as "not abnormal for age, no need to repeat." Another defense metabolic disease expert testified that even if all the tests he recommended had been done, metabolic disease still could not be ruled out. Many other experts testified that there was no indication of metabolic or hereditary disease in any of the children or in their test results. Buchanan has not shown that the "lost" evidence would have been exculpatory. Also, hereditary tests could have been performed by the defense on the surviving Leal family members if Buchanan really thought it likely that exculpatory evidence would have been produced.

> Buchanan also alleges that she was prejudiced because the bedding and pajamas were not collected at the scenes of the deaths and because photographs were not taken at the scene. Buchanan has failed to show how these items would be material to her defense.

(Exhibit 180, at pp. 27-28).

This Court has reviewed the state court record and finds that petitioner has failed to meet the required standard under *California v. Trombetta*, 467 U.S. 479 (1984) and *Arizona v. Youngblood*, 488 U.S. 51 (1988). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet her burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This Court will deny habeas relief as to Ground Two.

**C.  Ground Three**

Petitioner asserts that the district court's instruction on the elements of premeditation improperly reduced the State's burden of proving premeditation and deliberation beyond a reasonable doubt. (Docket #8). The challenged jury instruction was instruction No. 17, which stated:

> Premeditation is a design – a determination to kill – distinctly formed in the mind at any moment before or at the time of the killing.
>
> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituted the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate and at least premeditated murder.

(Exhibit 114).

Petitioner argues that the premeditation instruction, Instruction 17, violated her due process rights. In *Byford v. State*, 116 Nev. 215, 993 P.2d 700 (2000), the Nevada Supreme Court observed that while willful first-degree murder required that the killer "actually intend to kill," not every killing was intended. *Id.* at 713. The *Byford* Court decided that Nevada courts should no longer instruct the jury that "a killing resulting from premeditation is willful, deliberate and premeditated

11

murder." *Id.* Because such a *Kazalyn*[4] instruction blurred the lines between first and second degree murder, the Nevada Supreme Court held that first degree murder requires proof beyond a reasonable doubt of the separate and three distinct elements of willfulness, deliberation, and premeditation. *Id.* at 713-14. The Court in *Byford* issued a new instruction for use in first-degree murder cases based on willful, deliberate, and premeditated killing. *Id.* Subsequently, in *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), the Ninth Circuit held that a petitioner's "federal constitutional right to due process was violated by use of the *Kazalyn* instruction because it relieved the State of its burden of proving every element of first degree murder beyond a reasonable doubt." *Polk,* 503 F.3d at 909.

In the instant case, the trial court gave a *Kazalyn* instruction on premeditation. (Exhibit 114, Instruction 17). However, the trial court's erroneous use of the *Kazalyn* instruction does not end this Court's inquiry. As explained in *Polk v. Sandoval*, the Court must determine whether the constitutional error was harmless error. Petitioner will be entitled to relief only if "'the error had a substantial and injurious effect or influence in determining the jury's verdict.'" *Polk v. Sandoval*, 503 F.3d at 911 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The Nevada Supreme Court found that there was sufficient evidence from which a jury could find premeditation. (Exhibit 180, at p. 29). The facts from which the Nevada Supreme Court reached its conclusion appear in the state court record, particularly, in the trial transcripts. The Nevada Supreme Court found "[i]n this case, we have the testimony regarding how long it takes to suffocate an infant, which is sufficient evidence of deliberation, and the two children being killed years apart is sufficient evidence to infer premeditation." (Exhibit 180, at p. 29). Given the totality of the jury instructions and the trial testimony, there is no reasonable likelihood that the jury applied the challenged instruction improperly in petitioner's trial. The jury instruction error therefore could not have had a substantial and injurious effect on the jury's verdict. The error was harmless error under the *Brecht* harmless error standard. The Court will deny habeas relief with respect to Ground Three.

///

---

[4] This instruction first appears in Nevada's case law in *Kazalyn v. State*, 108 Nev. 67, 75, 825 P.2d 578, 583 (1992).

**D. Ground Four**

In Ground Four, petitioner alleges that trial counsel was ineffective in failing to petition the trial court for an order requiring living family members to undergo genetic or metabolic testing and denied petitioner's statutory right to an evidentiary hearing under NRS 34.790. (Docket #8). Petitioner, in the reply brief, formally abandoned Ground Four. (Docket #50, at p. 34). As such, habeas relief is denied as to Ground Four of the amended petition.

## IV. Certificate of Appealability

In order to proceed with her appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability. In Ground Three, petitioner claims that jury instruction #17, the premeditation *Kazalyn* instruction, violated her due process rights. *See Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007) ("federal constitutional right to due process was violated by use of the *Kazalyn* instruction because it relieved the State of its burden of proving every element of first degree murder beyond a reasonable doubt."). Herein, *supra*, this Court found the jury instruction error to be harmless error under the *Brecht* standard and denied habeas relief with respect to Ground Three. The Court further finds that, as to Ground Three, the issues presented could be debatable among jurists of reason and that a court could resolve the issues differently. Petitioner is entitled to a certificate of appealability as to Ground Three. The Court denies a certificate of appealability as to all other grounds of the petition.

**V.     Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is <u>**GRANTED** A CERTIFICATE OF APPEALABILITY</u> as to **Ground Three** of the amended petition.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY** as to all other grounds in the amended petition.

DATED this 21st day of July, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE